**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
NOVEMBER 18, 2021

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
NOVEMBER 18, 2021

ERIN L. LENNON
SUPREME COURT CLERK

**IN THE SUPREME COURT OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 98973-7 |
| Respondent, | EN BANC |
| v. | Filed: November 18, 2021 |
| BRIAN JEFFREY ANDERSON, | |
| Petitioner. | |

GORDON McCLOUD, J.—Brian Jeffrey Anderson was convicted of four counts of delivery of a controlled substance, methamphetamine. The fourth amended information alleged that the first count was subject to RCW 69.50.435(1)(c)'s "[a]dditional penalty" because the offense occurred "[w]ithin one thousand feet of a school bus route stop designated by the school district." The special verdict form asked the jury whether the defendant delivered a controlled substance to a person "within one thousand feet of a school bus route stop designated by a school district." The jury was not instructed on the definition of "school bus route stop." But unchallenged jury instructions proposed by the State

*State v. Anderson (Brian Jeffrey)*, No. 98973-7

defined "school bus" as a vehicle with a seating capacity of more than 10, among other specifications, and the State presented no evidence on the seating capacity of any buses or on the other listed definitional factors. The jury then answered yes to the special verdict form's question, and the court imposed RCW 69.50.435(1)(c)'s "[a]dditional penalty" (or sentencing enhancement).

Anderson contends that under the law of the case doctrine, the unchallenged jury instruction defining "school bus" in such detail compelled the State to prove that a "school bus" meeting that detailed definition actually used the school bus stops at issue here. He further argues that the evidence was insufficient to meet that burden of proof. The State acknowledges that it presented no evidence on the "school bus" definitional details; it argues that neither the statute nor the law of the case doctrine required it to do so. We agree with the State and affirm.

FACTUAL AND PROCEDURAL HISTORY

Two confidential informants working with the Ellensburg police completed controlled buys of methamphetamine from Anderson on four separate occasions: once on August 20, 2015, and three times in 2016. Clerk's Papers (CP) at 33-34; 2 Jury Trial Proceedings (JTP) (July 31, 2018) at 189, 199; 3 JTP (Aug. 1, 2018) at 320. As a result, the State charged Anderson with four counts of delivery of a controlled substance. CP at 33-34. The fourth amended information alleged that the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

first count was subject to an enhanced sentence because the crime occurred within 1,000 feet of a "school bus route stop designated by the school district" in violation of RCW 69.50.435. *Id.* at 33.

To prove this sentence enhancement factor, the State called John Landon, the assistant director of transportation for the Ellensburg School District. 2 JTP (July 31, 2018) at 234.[1] Landon described State's exhibit 6 to the jury; it was a map prepared by the previous director of transportation that showed five bus stops within 1,000 feet of the August 20, 2015 drug delivery charged in count 1. *Id*. at 234, 236. Landon further testified that his department used an "educational logistic software" to create the bus route maps by uploading maps from the county, marking school bus stops, and then using a database "to add or subtract and to remove bus stops, depending on ridership, depending if they're active students . . . ." *Id.* at 236. All five of the stops he identified were used regularly during the school district's summer school program in 2015, and that program ran until

---

[1] Landon testified that he was "assistant director of transportation" for the "Ellensburg Transportation Department." 2 JTP (July 31, 2018) at 234. In his briefing on appeal, Anderson argues that this testimony identified Landon as an employee of Ellensburg's municipal transit system and not as an employee of the school district. Br. of Appellant at 22 n.6 (Wash. Ct. App. No. 36330-9-III (2019)); Suppl. Br. of Pet'r at 19. Anderson is correct that Landon never explicitly clarified that point. But Landon's status as a school district employee can certainly be inferred from his testimony. In addition, because we hold that the State was not required to prove the specific details of the buses using these stops, Landon's status as a school district employee is immaterial.

*State v. Anderson (Brian Jeffrey)*, No. 98973-7

August 23—three days after the date of the charged drug transaction. *Id.* at 237-38.
No other witness testified about buses or bus stops, and no testimony or evidence
was presented on the specifications of the school buses that used these stops. *See
id.* at 233-38.

The court used the State's proposed jury instructions. It instructed the jury
on the elements of delivery of a controlled substance for all four counts. CP at 47-
50. It instructed the jury that the State had the burden of proving each element of
the crimes and sentence enhancements beyond a reasonable doubt. *Id.* at 47-50, 58.
The court also provided the jury with a special verdict form for count 1, which
read, "Did the defendant deliver a controlled substance to a person within one
thousand feet of a *school bus route stop designated by a school district*?" *Id.* at 75
(emphasis added).

The court did not instruct the jury on the definition of "school bus route
stop."[2] But it did instruct the jury on the definitions of "school" and "school bus."

---

[2] Washington Pattern Jury Instruction 50.64, the instruction defining "school bus
route stop," has been withdrawn. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN
JURY INSTRUCTIONS: CRIMINAL 50.64, at 1180 (4th ed. 2016). The comments explain
that the instruction "no longer serves much purpose following the legislature's removal of
a mapping requirement from the statutory definition of 'school bus route stop.'" *Id.* See
*infra* note 6 for further discussion of the statutory history.

4

*Id.* at 56, 57. Both instructions followed the Washington Pattern Jury Instructions.

Instruction 19 defined "school" as follows:

> The term "school" means a school or institution of learning having a curriculum below the college or university level as established by law and maintained at public expense. The term 'school' also means a school maintained at public expense in a school district and carrying on a program from kindergarten through the twelfth grade, or any part thereof, including vocational education courses.

*Id.* at 56; *see* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY

INSTRUCTIONS: CRIMINAL 50.62, at 1177 (4th ed. 2016) (WPIC). Instruction 20

defined "school bus" as follows:

> "School bus" means a vehicle that meets the following requirements: (1) has a seating capacity of more than ten persons including the driver; (2) is regularly used to transport students to and from school or in connection with school activities; and (3) is owned and operated by any school district for the transportation of students. The term does not include buses operated by common carriers in the urban transportation of students such as transportation of students through a municipal transportation system.

CP at 57; *see* WPIC 50.63, at 1179.

The defense did not object to these instructions. 4 JTP (Aug. 2, 2018) at 530-34.

The jury returned guilty verdicts on all four counts of delivery and answered

yes to the "school bus route stop" sentence enhancement.[3] CP at 74-82. Anderson

---

[3] The fourth amended information also alleged that the drug crimes constituted major violations of the Uniform Controlled Substances Act, ch. 69.50 RCW. CP at 33-34

*State v. Anderson (Brian Jeffrey)*, No. 98973-7

moved for an alternative, more rehabilitative, drug offender sentencing alternative sentence pursuant to RCW 9.94A.662. *Id.* at 83. The trial court denied the motion and sentenced Anderson to 54 months of confinement on count 1, including 24 months for the "school bus route stop" aggravating factor. *Id.* at 97-98. It also imposed concurrent sentences of 30 months each on counts 2, 3, and 4. *Id.*

On appeal, Anderson raised five assignments of error. Relevant here, he argued that the law of the case doctrine compelled the State to prove that the buses that actually used the identified bus stops met the seating capacity and other detailed specifications in instruction 20, and that the State failed to do so. Specifically, he argued that "[n]o evidence was presented as to any school bus's seating capacity, ownership, or operation," so the State provided "insufficient evidence to support that the route stops were actually school bus route stops." Br. of Appellant at 2 (Wash. Ct. App. No. 36330-9-III (2019)). He also argued that the trial court erred in imposing certain legal financial obligations (LFOs). *Id.* at 3.

A divided three-judge panel of Division Three of the Court of Appeals affirmed the convictions and sentence but remanded to strike the LFOs. In an unpublished opinion, each judge wrote separately on the sufficiency of evidence issue. *State v. Anderson*, No. 36330-9-III (Wash. Ct. App. June 4, 2020)

---

(citing 9.94A.535(3)(e)(i)). The jury answered yes to these sentence enhancements, also. *Id.* at 74-82.

6

(unpublished), http://www.courts.wa.gov/opinions/pdf/363309_unp.pdf. The lead opinion stated that the law of the case doctrine did not apply to the "school bus" definition at all and that sufficient evidence supported the "school bus route stop" special verdict. *Anderson*, slip op. at 10-13. The concurring opinion avoided discussion of the law of the case doctrine completely. *Id.* at 1-3 (Lawrence-Berrey, J., concurring). It focused solely on statutory interpretation, explained that "the legislature intended the State to prove only that a school district had designated the stop a school bus route stop," and concluded that the State had done so. *Id.* at 2. The concurring in part/dissenting in part opinion would have reversed the sentence enhancement because the State did not introduce evidence of the seating capacity of school buses using the stops, which it interpreted as a statutory requirement. *Id.* at 1 (Fearing, J., concurring in part/dissenting in part).

Anderson's motion for reconsideration was denied, and he petitioned for review in this court on three issues. Pet. for Review at 1-2. We granted review only on his challenge to the sufficiency of the evidence supporting the "school bus route stop" sentence enhancement. *State v. Anderson*, 196 Wn.2d 1024 (2020).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Anderson (Brian Jeffrey)*, No. 98973-7

ANALYSIS

I. RCW 69.50.435(1)(c) requires the State to prove only that a school district designated a location as a "school bus route stop"—not that a "school bus" meeting the technical definition in RCW 69.50.435(6)(b) actually stopped there

Anderson frames his argument wholly in terms of the law of the case doctrine. This long-established doctrine, which applies in both civil and criminal cases, "is 'multifaceted' and 'means different things in different circumstances.'" *State v. Johnson*, 188 Wn.2d 742, 755, 399 P.3d 507 (2017) (quoting *Roberson v. Perez*, 156 Wn.2d 33, 41, 123 P.3d 844 (2005)). In the context of jury instructions, the law of the case doctrine refers to the rule that "'the instructions given to the jury by the trial court, if not objected to, shall be treated as the properly applicable law.'" *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 113, 829 P.2d 746 (1992) (quoting 15 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: JUDGMENTS § 380, at 56 (4th ed. 1986)).[4]

---

[4] *See also Johnson*, 188 Wn.2d at 747 (reaffirming the doctrine's vitality on state law grounds); *State v. Lee*, 128 Wn.2d 151, 159, 904 P.2d 1143 (1995) ("Added elements become the law of the case…when they are included in instructions to the jury."); *Tonkovich v. Dep't of Labor & Indus.*, 31 Wn.2d 220, 225, 195 P.2d 638 (1948) ("[T]he sufficiency of the evidence to sustain the verdict is to be determined by the application of the instructions and rules of law laid down in the charge."); *Pepperall v. City Park Transit Co.*, 15 Wash. 176, 180, 45 P. 743 (1896), *overruled in part on other grounds by Thornton v. Dow*, 60 Wash. 622, 111 P. 899 (1910), *abrogated by Davis v. Baugh Indus. Contractors, Inc.*, 159 Wn.2d 413, 150 P.3d 545 (2007).

*State v. Anderson (Brian Jeffrey)*, No. 98973-7

Thus, in a criminal case, "the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the 'to convict' instruction." *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998) (citing *State v. Lee*, 128 Wn.2d 151, 159, 904 P.2d 1143 (1995)) (where to-convict instruction erroneously included venue as an element, State was required to prove venue beyond a reasonable doubt). Similarly, if an unchallenged instruction limits the State to one of several alternative means of committing a crime, then the doctrine limits the State to proving that specified means. *State v. Chamroeum Nam*, 136 Wn. App. 698, 706-07, 150 P.3d 617 (2007) (statute defined robbery as including two alternatives—taking from a victim's person or taking property in a victim's presence—but omission of latter alternative in jury instruction defining robbery compelled State to prove that defendant took from victim's person). The doctrine applies with equal force to jury instructions pertaining to sentence enhancements and aggravating circumstances because they are the functional equivalent of elements of a crime.[5]

---

[5] *State v. Willis*, 153 Wn.2d 366, 374-75, 103 P.3d 1213 (2005) (statute provided that firearm enhancement could be imposed if the jury found that "the defendant or an accomplice" was armed, but under law of the case doctrine, unchallenged jury instruction omitting "or an accomplice" compelled State to prove that defendant himself was armed). *See also State v. Guzman Nuñez*, 174 Wn.2d 707, 712, 285 P.3d 21 (2012) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *Blakely v. Washington*, 542 U.S. 296, 313-14, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004)).

*State v. Anderson (Brian Jeffrey)*, No. 98973-7

It follows, then, that the law of the case doctrine applies in this case only if the jury instructions heightened the State's burden beyond what was required by the governing statute. We therefore begin by addressing whether RCW 69.50.435(1)(c) requires the State to prove not only that an offense occurred within 1,000 feet of a "school bus route stop designated by the school district" but also that the bus stop was designated for use by vehicles meeting RCW 69.50.435(6)(b)'s technical definition of "school bus" and that such vehicles actually stopped there. We conclude that RCW 69.40.435(1)(c) does not require such additional proof.

When interpreting a statute, our fundamental objective is "to ascertain and carry out the Legislature's intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). We do this by beginning with "the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." *Lenander v. Dep't of Ret. Sys.*, 186 Wn.2d 393, 403, 377 P.3d 199 (2016) (citing *Campbell & Gwinn*, 146 Wn.2d at 10-11).

RCW 69.50.435 provides that a sentencing enhancement of up to double the original sentence may be imposed on "[a]ny person who violates RCW 69.50.401

by manufacturing, selling, delivering, or possessing with the intent to manufacture,

sell, or deliver a controlled substance listed under RCW 69.50.401" in certain

specified locations. Covered locations include

> (a) In a school;
> (b) On a school bus;
> (c) Within one thousand feet of a school bus route stop designated by the
>     school district;
> . . . .

RCW 69.50.435(1).

In separate subsections, the statute defines "school," "school bus," and

"school bus route stop." "School" is defined as follows:

> "School" has the meaning under RCW 28A.150.010 or 28A.150.020. The
> term "school" also includes a private school approved under
> RCW 28A.195.010.

RCW 69.50.435(6)(a). The jury instruction defining "school" basically tracked the

statutory definitions of "public school" under RCW 28A.150.010 and "common

school" under RCW 28A.150.020.  "School bus" is defined as follows:

> "School bus" means a school bus *as defined by the superintendent of
> public instruction* by rule which is owned and operated by any school
> district and all school buses which are privately owned and operated
> under contract or otherwise with any school district in the state for the
> transportation of students. The term does not include buses operated
> by common carriers in the urban transportation of students such as
> transportation of students through a municipal transportation system.

11

RCW 69.50.435(6)(b) (emphasis added). In turn, the Superintendent of Public

Instruction defines "school bus" as follows:

> "School bus" means every vehicle with a seating capacity of more than ten
> persons including the driver regularly used to transport students to and from
> school or in connection with school activities.

WAC 392-143-010(1).  The jury instruction defining "school bus" basically

tracked both the statute and the WAC.

Finally, the statute defines "school bus route stop" as follows: "'School bus

route stop' means a school bus stop as designated by a school district." RCW

69.50.435(6)(c).[6]  As mentioned above, no jury instruction defined "school bus

route stop."

Reading the statute in context shows that "school," "school bus," and

"school bus route stop" are stand-alone terms. Each term is separately defined, and

each corresponds with a separate, specific sentencing enhancement for drug

dealing "in a school," "on a school bus," or "within one thousand feet of a school

bus route stop designated by the school district." RCW 69.50.435(1)(a)-(c). In

---

[6] The statute originally defined "school bus route stop" as "a school bus stop as designated on maps submitted by school districts to the office of the superintendent of public instruction." Former RCW 69.50.435(f)(3) (1991). In 1997, the statute was amended, removing the map submission requirement. Former RCW 69.50.435(f)(3) (1997). This statutory history highlights that the definition has always centered on the designation of a given location as a school bus stop and not on the specific types of school buses that use, or are designated to use, the stop.

*State v. Anderson (Brian Jeffrey)*, No. 98973-7

other words, the definitions of "school" and "school bus" are independent, not nested within "school bus route stop."

Thus, a plain reading of the statute shows that to support a RCW 69.50.435(1)(c) sentence enhancement, the State must prove only that the drug transaction occurred near a "school bus stop as designated by the school district." RCW 69.50.435(6)(c). The statute does *not* require the State to prove that the school district designated that bus stop for use by a "school bus" meeting the technical definition in RCW 69.50.435(6)(b) or that such a specific type of school bus actually used the stop.

The next question, then, is whether the jury instructions—read in conjunction with the law of the case doctrine—did.

II.     The law of the case doctrine did not change the State's burden of proof in this case

Anderson argues that the law of the case doctrine applies to the instruction defining "school bus" and compelled the State to prove beyond a reasonable doubt that a bus meeting that definition actually used one of the school bus route stops near the site of the drug transaction.[7] Suppl. Br. of Pet'r at 1, 4-5. He contends that

---

[7] Though Anderson contends that the jury instructions compelled the jury to determine whether a school bus "actually stopp[ed]" at school bus route stops, the instructions do not support such a reading. Suppl. Br. of Pet'r at 4. At most, the instructions could be read to require the jury to determine whether a school bus route stop

since the words "school bus" appear in the special verdict form's phrase "school bus route stop," and since another instruction informed the jury that each instruction was "important," a reasonable juror would conclude that the definition of "school bus" applied to "school bus route stop designated by a school district." [8] *Id.* at 4, 6-7; Pet. for Review at 9.

We disagree. The special verdict form asked only, "Did the defendant deliver a controlled substance to a person within one thousand feet of a school bus route stop designated by a school district?" CP at 75. This question tracked the language of RCW 69.50.435(1)(c). As the Court of Appeals' lead opinion explained, the form asked about school bus *stops*, not school buses. *Anderson*, slip op. at 12-13. The query focused, correctly, on whether a particular location was "designated" as a "school bus route stop" by "a school district"—not on what kinds of buses used those stops. Thus, the special verdict form did not add any elements to those required by the statute. *Cf. Hickman*, 135 Wn.2d at 105.

---

was "designated by a school district" for use by a "school bus" as defined. CP at 55-57, 75.

[8] Anderson cites to two unpublished Division Three cases that reversed "school bus route stop" sentence enhancements under conditions similar to those presented here, indicating this issue arises with some frequency. *See State v. Mumm*, No. 32454-1-III (Wash. App. Ct. July 28, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/324541.unp.pdf; *State v. Boston*, No. 29658-0-III (Wash. App. Ct. Aug. 22, 2013) (unpublished), http://www.courts.wa.gov/opinions/pdf/296580.unp.pdf.

14

*State v. Anderson (Brian Jeffrey)*, No. 98973-7

The core of Anderson's argument is that under the law of the case, the definition of "school bus" must be included in the phrase "school bus route stop" anyway.

Anderson is correct that the law of the case doctrine applies to more than just to-convict instructions. *State v. France*, 180 Wn.2d 809, 816, 329 P.3d 864 (2014) (collecting cases). The doctrine may also apply to definitional instructions under certain circumstances. *Id.* But those circumstances are not present here.

A definitional instruction can increase the State's burden of proof only if it defines a matter that is relevant to an element listed in the to-convict instruction, special verdict form, or its equivalent.[9] *E.g., State v. Ng*, 110 Wn.2d 32, 39, 41, 750 P.2d 632 (1988); *State v. Hames*, 74 Wn.2d 721, 724-25, 446 P.2d 344 (1968); *State v. Leohner*, 69 Wn.2d 131, 134, 417 P.2d 368 (1966) (citing *Crippen v. Pulliam*, 61 Wn.2d 725, 380 P.2d 475 (1963)); *Williams v. Dep't of Labor & Indus.*, 56 Wn.2d 127, 351 P.2d 414 (1960); *State v. Worland*, 20 Wn. App. 559,

---

[9] The fact that a definitional instruction must define a matter that is relevant to an element listed in the to-convict instruction or its equivalent is *necessary* for the definition to have effect as the law of the case, but it is not sufficient. For example, when multiple or alternative definitions of a single element are provided in jury instructions, each of those definitions does not necessarily become the law of the case. *See France*, 180 Wn.2d at 818-20; *State v. Tyler*, 191 Wn.2d 205, 212-15, 422 P.3d 436 (2018). *France* and *Tyler* do not control the analysis here, however, since Anderson's jury was not given multiple or alternative definitions of any element.

15

582 P.2d 539 (1978); *Englehart v. Gen. Elec. Co.*, 11 Wn. App. 922, 527 P.2d 685 (1974). Otherwise, there is nothing to which the jury can apply the definition.

For example, in *State v. Leohner*, the to-convict instruction for the charge of indecent liberties erroneously added an intent element that was not present in the statute: it instructed that the State must prove the defendant acted willfully and unlawfully. 69 Wn.2d at 132. A separate instruction defined "willfully" and "unlawfully." *Id.* at 134. Since no party objected, the instructions "became the law of the case." *Id.* (citing *Crippen*, 61 Wn.2d 725). The instructions "thus cast[] an added burden upon the prosecution," and the definition of "willfully" and "unlawfully" delineated the added burden. *Id.*

But that logic works only if the matter defined relates to an element in the to-convict instruction or its equivalent—here, the special verdict form. For example, if the jury in Anderson's case had been instructed on the definition of "firearm," it would be absurd to argue that the definition of "firearm" increased the State's burden of proof—because that definition is irrelevant to any element in the special verdict form.

The instruction defining "school bus" in this case is just as irrelevant. To be sure, the words "school bus" do appear in the special verdict form as part of the phrase "school bus route stop." But, as discussed, while the existence of a nearby

16

*State v. Anderson (Brian Jeffrey)*, No. 98973-7

"school bus route stop" is an element of the RCW 69.50.435(1)(c) sentence

enhancement, the existence of a particular type of "school bus" is not. Because the

definition of "school bus" did not define any element of the aggravating

circumstance, it was simply irrelevant to the question asked by the special verdict

form—as irrelevant as a stray definition of "firearm" would have been.[10]

We therefore hold that the instruction defining "school bus" did not increase

the State's burden of proving a nearby "school bus route stop." The definition of

"school bus" did not affect the State's burden of proof under the law of the case

doctrine.

III. Because the State was not required to prove that a bus meeting the
jury instruction's definition of "school bus" used the bus stops,
Anderson's challenge to the sufficiency of the evidence fails

A petitioner may challenge the sufficiency of the evidence supporting an

element of a crime (or sentence enhancement), including an element added under

the law of the case doctrine. *Hickman*, 135 Wn.2d at 102. Such a challenge to the

---

[10] Anderson's own position on the jury instruction defining "school" seems to support this conclusion. Anderson "acknowledges the instructions also defined the term 'school,' which also appears to be incorporated into the term 'school bus route stop.'" Suppl. Br. of Pet'r at 18 n.5. But he explicitly "makes no claim with respect to this definition." *Id.* This position seems to acknowledge that the definition of "school" was irrelevant—that it did not define any term used in the special verdict form—even though the word "school" appears in the special verdict form just like the phrase "school bus" does.

17

*State v. Anderson (Brian Jeffrey)*, No. 98973-7

sufficiency of the evidence implicates "the fundamental protection of due process

of law." *Johnson*, 188 Wn.2d at 750 (citing *Jackson v. Virginia*, 443 U.S. 307, 319,

99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). That fundamental constitutional

protection requires the State to prove beyond a reasonable doubt every element of a

charged crime and every element of an "aggravating circumstance that increases

the penalty for a crime." *Guzman Nuñez*, 174 Wn.2d at 712; *see also Johnson*, 188

Wn.2d at 750.

Anderson's sufficiency-of-evidence challenge depends on the  proposition

that the "school bus" instruction increased the State's burden of proof with regard

to the "school bus route stop" aggravator. But our discussion above makes clear

that neither the statute nor the definitional instruction imposed that heightened

burden. Anderson's sufficiency challenge fails.

CONCLUSION

First, we hold that the statutory definition of "school bus" is not an element

of the sentence enhancement that an offense occurred within 1,000 feet of a

"school bus route stop designated by the school district" under RCW

69.50.435(1)(c).  Hence, the jury should not be instructed on the definition of

"school bus."

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Second, we hold that the jury instruction defining "school bus" did not increase the State's burden of proof on that sentence enhancement either, even under the law of the case doctrine. It necessarily follows that Anderson's challenge to the sufficiency of the evidence to prove the details in that definition also fails.

We therefore affirm.

_____
Gordon McCloud, J.

WE CONCUR:

_____
González, C.J.

_____
Stephens, J.

_____
Johnson, J.

_____
Yu, J.

_____
Madsen, J.

_____
Montoya-Lewis, J.

_____
Owens, J.

_____
Whitener, J.